I'm going to ask to reserve three minutes of my 15-minute argument for rebuttal. And in those 12 minutes, I intend very briefly to address three issues. The first issue, dealing with the good faith instruction. The second issue, dealing with the requirement and instructions on the theft of pension funds on the last four counties. And the third issue, dealing with the requirement and instructions on the theft of pension funds on the last four counties. And very, very briefly on the statute of limitations issue. On the good faith issue, essentially the government's position is that the defendant's requested instruction could be refused because the court's instructions really covered the same area adequately. And what I'd like to point out is that there really is a major difference between the instruction requested by the defense and that given by the court. The court really radically limited the definition of good faith and very much changed it from that requested by the defense. And let me just give a quick illustration. If we have a situation in which a contractor is negotiating with someone about painting a house, and the contractor says he wants $5,000 to paint the house, and the owner says he'll pay $5,000 only if the garage is included, and there's some vagueness about the discussions, and at the end of the completion of the house, the contractor asks for the $5,000, and the owner says, no, you're obliged to paint the garage as well. And he says, well, give me the $5,000 today, and I'll paint the garage tomorrow. It's an absolute lie. He knows that he's not going to come back and paint the garage. But he is convinced that the contract final settlement was for the house alone. That is not fraud. Even though the statement is false, it makes it absolutely correct that the contract only required the house. But even if he was mistaken and a civil case would have to make due for the unpainted garage, if he honestly believes that the contract is for $5,000 for the house, he is not committing the crime of fraud when he takes the $5,000, even if he makes a false statement. Sotomayor, counsel, I don't think the government actually contests in theory what you're saying. The question is whether in defining the intent element of the crime, whether that sufficed to make the distinction that you're talking about. Because the intent element, the jury was told that they had to find an intent to deceive, an intent to cheat. And in your scenario, there would be none. So why wouldn't that be sufficient? Because the court instructed that good faith could be considered insofar as it related to a good faith belief in the truth of the assertions that the defendant made. So the court was saying you can have a good faith defense if what he told, the statements he made, if he believed them were true. But in my hypothetical, under the court's instruction, the painter would be guilty of fraud because he knew his statements were untrue, but he firmly and honestly believed he had fulfilled the contract and was entitled to full compensation. So that's the difference between the defense version asked for and rejected and the court version granted. And does it really get to the question whether a jury would have to find, in your scenario, an intent to deceive? And it seems to me wholly apart from the question of a defense, didn't the instruction require the jury to find that subjective desire to cheat somebody before rendering a guilty verdict, regardless of the good faith instructions? Well, Your Honor, I submit that what the court did was said there has to be an intent to cheat or deceive. But you can consider finding an intent to cheat or deceive good faith as to a belief in the truth of the representations. What I'm saying, Your Honor, is that the court's instructions defined intent to deceive and good faith in terms of an honest belief in the truth of what you said, as opposed to an honest belief in the entitlement to the property. And therefore, I submit that if my hypothetical is correct, and I submit that it is, that a good faith belief in entitlement can be a defense even if there's a misrepresentation that accompanies it, then the court's instructions were not consonant with that broader definition of good faith and that the defense was entitled to what is really a different instruction, and that is the one it requested. The subject of questions, let me just leave that and very quickly go to the second issue, which is the issue of theft from pension funds. And as we all are in agreement, this crime, 664, requires that money be stolen from pension funds. And the dispute here is that we all agree, the government agrees, that Mr. Shipsey made representations and received money from First California, which was not a pension fund. And then it in turn sought reimbursement from a pension fund. And we argued both insufficiency and the error in the court's instructions because it expanded the theories in the indictment. And I guess what I would rest on as conclusive proof of that is that both the government and the defense agree that the court stated that it was a necessary element of this theft from First Cal, that the defendant knowingly and willfully caused a transfer of money that belonged to the employee benefit funds with the intent to deprive the employee benefit fund of the benefit of ownership or possession of that money. Counsel, where did he think the money was coming from? Where did he think the money was coming from? Well, Your Honor, let me just stand on the instructional question because I submit to you... No, I'll come to that. But where did he think the money was coming from? He was taking it from the bank, but he got all the contractors to add additional amounts to their bills. Those bills were then submitted, and the money then was drawn down based on those numbers. Well, he knew where the money was coming from because when the original transaction took place, it was from the pension fund to the bank, and then the money was drawn down on these work orders that he put through that he knew was not going towards the building of the project. It was going to build his house. Your Honor, let me say this. What I just read was a theory of transfer. I understand. And what I'm saying, Your Honor, is that if that theory had been incorporated in the indictment, I wouldn't be here necessarily arguing that the government had not charged and proven that theory of transfer. What occurred, however, is that the theory of transfer that I just read is not in the indictment. We all agree that every element of a charge crime has to be in the indictment. If that was an element of the charge crime, and the Court said it was in instructing on it, then either that means the indictment was deficient for failure to leave out that element, or alternatively, that the Court added elements and changed theories when it instructed. And that's a constructive amendment of the indictment. I am not here to argue that there aren't theories of theft that this evidence, certainly on appeal, might not be sufficient to sustain. I am simply arguing that the theory that the Court eventually decided should go to the jury contained elements that had not been charged, were not in the indictment, and therefore, the indictment was necessarily expanded, is the sum total of the argument. On the third point, this is apparently an issue of first impression, not only in this circuit, but from what I've seen in all circuits, and it has to do with the meaning of the amendment of 3288, which allows a case to be recharged within a six-month period after it's dismissed. This Court decided the Pelican case under the prior version of this statute, and ruled that under the prior version, which talked about a dismissal if the indictment was defective or insufficient for any cause, and said, well, even though that's true, if you dismiss on speedy trial grounds and then you're past the appropriate statute of limitations, you can't recharge. The government's position is that the amendment of 3288, which changed really from any cause for any reason, necessarily expanded it so that, unlike Pelican, contrary to the holding of Pelican, now if there's a dismissal because of a speedy trial violation, the case can be recharged within the six-month period, even if the statute of limitation has expired. We both agree that the statute, however, when it says for any reason, doesn't mean for any reason, because there's further language in the new statute that says, well, not if it's a statute of limitations violation that it was dismissed for, or any other reason that would bar reprosecution. So the issue of first impression is, what is the any-other-reason exception to the for-any-reason clause of this statute? And we submit that Pelican remains good law. It was essentially based on the notion that you can dismiss an indictment for many reasons, but you can't get a six or eight. But if the very reason is a failure to act quickly enough under the Speedy Trial Act, when you combine that with the statute of limitations. Sotomayor, the question that I have for you, and just in terms of statutory construction, when Congress was looking at the timeliness aspect, they chose to say if the statute of limitations has run out. So in thinking about the question of timeliness, didn't Congress make the choice that the only time reprosecution would be barred on a timeliness question is where the statute of limitations has run out, not where some other time limit has run out? Well, Your Honor, I would submit to you that if it was Congress's intention to make a statute of limitations violation the only exception to the six-month grace period, it wouldn't have included the language, or for any other reason, that would bar reprosecution. My question was whether there were any other time-based reasons. For example, there could be a double jeopardy bar to reprosecution or someone became incompetent to be tried. There are a number of other reasons why reprosecution might not occur other than time-related reasons, and that's why I directed my question to the time issue. Well, there is an element of the divining tea leaves in this, Your Honor, but I suppose one could say that Congress could have been aware of the Pelican opinion, and in talking about the statute of limitations seems clear. I mean, obviously, if it's dismissed for that reason originally, the dismissal can't revive the prosecution, but that it set an exception to deal with things like the existing authority in the Pelican case. It would be a – I suppose I would say under the rule of lenity, Your Honor, if there's any uncertainty about this, it has to be read in a way that favors the defendant. Pelican is a decision of this Court. There's no express attempt to overrule it in the additional language, and I would submit for that reason that it remains good authority. I see that I've exhausted my 12 minutes, and I'll reserve the remaining three minutes,  May do so, sir. And now we will hear from Mr. Lay. Good morning. If it pleases the Court, my name is Lawrence Lay. I'm an assistant United States attorney here in San Francisco, and I represent the United States in this case. Let me address the good-faith instruction issue first. Two points I want to make. The first is that the district court's elements instructions in this case made the defendant's proposed good-faith instructions unnecessary. And the second point is that the defendant's entitlement instruction, in particular, actually distorts the meaning of intent to defraud. Turning to the first point that the defendant's good-faith instructions were unnecessary, the general rule, which we cite in our brief, is that where the court is adequately instructed on intent to defraud, the defense isn't entitled to a good-faith instruction. And the jury was instructed on the intent to defraud here, the standard instruction, intent to deceive or cheat. In addition, there were two other mens rea elements that we don't identify in our brief, but I want to take the opportunity to call to your attention now. They're in the excerpts of record. You can see that with respect to each of the offenses in question, the defendant also said with respect to mental state, that the government had to prove that the defendant made false representations knowing that they were false, and that the government also had to prove the defendant devised a scheme to obtain money or property. There's no contention that these instructions don't adequately instruct on the intent to defraud. So a good-faith instruction wasn't necessary here under prevailing law. Now, turning to the second point that ---- Do you agree or disagree with Mr. Reardon's example as being an example of an untruth that would not equate to fraud? It sounded like that, Your Honor, but that's ---- that hypothetical he gave is a far distance from the factual context that we have in this case. And ---- But before you ---- before you ---- I understand that you don't agree that the two cases are similar, his hypothetical in this case. But would the instructions that were given be adequate to allow the jury to conclude that his hypothetical defendant had not intended to cheat anybody? I ---- no. I think his instructions are wrong. I think they distort the meaning of intent to defraud. I may not have made my question clear. The instructions that the trial court actually gave in this case, would those instructions have allowed a jury to conclude that his hypothetical defendant had not intended to cheat? They would ---- what they would have allowed a jury to do is consider the factors that the defense in that hypothetical would want them to consider, namely the ---- well, I'm trying to remember the details of the hypothetical. The hypothetical was basically that the person had done everything that their contract required them to do. And the instructions that the court gave in that case would allow, in our case, would allow a court in that case to consider those points. But what they would not do, and what's wrong with the defendant's instructions here, is that they would not allow the jury to seize on an isolated point, a fact, and use that to presumptively resolve the case. And here's what's wrong with the defense instructions that they proposed. When I say they distort the meaning of intent to defraud, they equate the defendant's secret undisclosed belief, which we don't have in that hypothetical, by the way, the instructions here equate the defendant's secret undisclosed belief in his entitlement to the proceeds with a lack of intent to defraud. Now, what that does is negate the government's proof of intent to defraud, no matter how strong. Let me be specific about it. The instruction the defendant is given, of course, has not been adopted by any Federal court. His principal citation for his support for the instruction is to general common law principles. But his instructions don't take into effect factors that the common law would take into account, and that is the defendant's intent in this case to conceal forever. What he was doing and his intent to harm the project. In this case, in the factual context of this case, the defense never disclosed, never intended to disclose his belief in his entitlement. In fact, he lied about it. And when he was asked about it by a representative of the bank, First California, Mr. Hentz, he said, well, let me read the passage from Reporters' Transcript 638. Quote, the question that I'm referring to is one that I asked Mr. Shipsy after May 24th, which is there's allegations that there's money being diverted from Stonefield to Obert's. And Mr. Shipsy denied that and said it was nothing but mudslinging and bad eggs and subcontractors trying to leech on the project for other reasons. Unquote. The defendant's instruction in this case would cancel out that powerful proof of the defendant's lies about what he was doing here because the defendant had an undisclosed secret belief in his entitlement to the proceeds. And that distorts the meaning of intent to defraud. I'm still not sure I answered your question on the hypothetical. And as I've tried to address it, I hope I'm addressing it. But if I don't complete that before I'm through here, let's talk about it some more. In the factual context of this case, the defendant's proposed instructions don't take out, don't take into account the fact that the defendant was creating a substantial risk of harm to the project. This is something that the common law would take into account if we really want to refer to the common law. The project in this case was cash-starved, way over budget. The defendants kept on taking money for the building of this very large residence. There were unpaid bills. One subcontractor, Golden State Lumber, over $1.3 million at the end of the construction. The pension funds foreclosed. But the pension funds collateral for that foreclosure was impaired. They thought they were building, putting sticks of lumber and pipe on a pension, on condominiums in Santa Rosa. Instead, they were partially building a residence in Novato. And every piece of lumber and pipe that was placed on the defendant's house was a piece of lumber or pipe that was not placed and not available at the time of the foreclosure. That's a loss to the pension funds. A common law court would not ignore facts like these, but the defendant's instruction in this case allowed the defense to basically cancel out that kind of proof. Counsel, before you run out of time, I'd like to ask you to address the question of the Speedy Trial Act and the timeliness. Yes, Your Honor. What is your understanding of the amended version of 3288 and what the exception should be read to include? I take it for the plain language that it is, Your Honor. The savings clause at issue provides for that indictment. If an indictment is dismissed for any reason, a new indictment may be returned within six months. But no indictment may be returned where dismissal was for the statute of limitations reasons or, quote, some other reason that would bar prosecution. There's not a lot of ambiguity in that language that I can see, and there's no room for a rule of lenity, which only applies when there's ambiguity. The reasons that would bar prosecution should not, under this language, include a dismissal without prejudice under the Speedy Trial Act. They might include dismissals for double jeopardy, for other reasons that were found to be, where the district court found dismissals to be with prejudice. And we don't have that here. And counsel's citation to Pelequin deals with a much narrower statute. What was the state of the law generally at the time of our earlier case under the earlier statute? Were there any ñ did all circuits have the view that the Speedy Trial Act violation under the old law would have barred the use of the savings clause? I don't think there were any other cases. There were many other ñ well, there were no other cases that I found dealing with the Speedy Trial Act in any other circuit. And there weren't very many cases that talked about that old statute in any great detail. So we don't have a lot to turn back to there that at least I found. And so what conclusions, if any, can we draw from what Congress did with respect to our old case? Well, with ñ I mean, one way to look at it is they didn't like our case and they changed it. One way to look at it is they never heard of our case and it's irrelevant. And the third way is the way opposing counsel wants to look at it, which is it remains good law. So how do we sort through that? Well, I think you're governed first by the plain language of the statute. You start with that. There's no ambiguity here. If that's the case, then you stop right there as a court. I would also say that ñ well, I mentioned the Pelican case was decided on the language of another statute. There was a third point, but I've forgotten it, so I won't go to that. Just briefly on the final issue that the defendant covered, our most important ñ one of our most important points with respect to whether or not the court's instructions amended the ñ constructively amended the indictment in this case is that each indictment in a federal case incorporates the principle of Section 2, a theory of liability, the theory of liability of causation, specifically that if a defendant causes an act to be done by another, which if done by him or her would be a criminal act, then the defendant is punishable as a principle. That's what happened here. The defendant, by his false representations, caused monies to be released by the pension funds in this case in successive amounts over a two-year period of time. The court's language used in its instructions were to the jury, if you find the defendant caused a transfer of the proceeds in this case, then that element is proven. Well, when stealing takes place, a transfer occurs. When a release of money, which is how it was phrased in general terms in the incorporated paragraph 6F of the indictment, when a release of money from pension funds accounts, a transfer occurs. There was no constructive amendment here. That language did not substantially change the indictment. I've come to the conclusion of my prepared remarks in this matter. I still can't remember that point I was going to make with the Court, so unless the Court has another question, I'm going to sit down. I think not. Thank you. Thank you. And, Mr. Reardon, you have some rebuttal time remaining. Briefly, Your Honor, here's the nub of the matter. The Court twice instructed, and it's at ER 181, 184, on an intent to defraud. And it stated the sentence, an intent to defraud is an element to deceive, is an intent to deceive or cheat. Fine, well enough up to there. It then goes on to say, in determining whether or not the defendant acted with an intent to defraud, you may consider whether or not the defendant had a good faith belief in the truthfulness of representations made by him. So it's then saying that it's an intent to deceive, and you can consider a good faith belief as to any deceptions in the truthfulness of the misrepresentations, but it does not say you can consider a good faith belief as to whether he was entitled to the funds he obtained. And by arguing the facts here, Mr. Lay, I think, is seeking on perhaps a tough case to make bad law. If a bully takes a school kid's hat and says, I won't give it back to you unless you pay me 5 bucks, and he says, I'll pay it to you tomorrow, and he's lying, he's not going to pay it. That is not fraud. He is not guilty of fraud under any meaningful definition. Because he has a belief entitled to his hat, which is correct, even if it were uncorrect, if it's honestly held, his misrepresentation does not constitute fraud. And as a matter of law, there's a big difference between the instructed and requested and that given by the court. What Mr. Lay is really saying is, well, but look at these facts. Even under a proper instruction, there would be fraud here. But that's a question for the jury under proper instructions. He may be correct that a jury would say, you know what, this guy is saying he honestly believed it was his property. It's hogwash. In tax cases, the Supreme Court has said someone is entitled to a defense that they don't believe that their salary is income. If they honestly don't believe that, they are not guilty of tax evasion. A jury is likely to say, that's nonsense, that's hogwash. You know, he did, he knew that it was income. But the defense of a belief in good faith entitlement, a belief in the entitlement to the property, is a valid proposition of law, and it was not given in this case. And in that sense, the trial court erred. And we believe that the issue of whether you would have been convicted under a proper instruction is one for the jury in this case under a proper instruction. Thank you. Thank you, counsel. The case just argued is submitted.
judges: Hall, Graber, Weiner